**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**
**Denver**

AMGEN INC., *et al.*,

      *Plaintiffs*,

v.

GAIL MIZNER, MD, in her official capacity
as Chair of the Colorado Prescription Drug
Affordability Review Board, *et al.*,

      *Defendants*.

**Civil Action**
**No. 1:25-cv-3452-DDD-STV**

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR LIMITED EXPEDITED DISCOVERY**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 4

I.      No discovery is needed to resolve Amgen's preliminary-injunction motion..................... 4

II.     Defendants' requested discovery is exceedingly overbroad ............................................... 9

III.    Equitable considerations also favor denying the motion .................................................. 13

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Amgen Inc. v. Mizner*,
No. 1:24-cv-810 (D. Colo. May 21, 2024), ECF 20 ......................................................... 2, 5

*Avaya, Inc. v. Acumen Telecom Corp.*,
2011 WL 9293 (D. Colo. Jan. 3, 2011) ......................................................................... 1, 9

*Biotech. Indus. Org. v. District of Columbia* (*BIO*),
496 F.3d 1362 (Fed. Cir. 2007) ......................................................................................... 5

*Carpenters Indus. Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017) ............................................................................................ 11

*Chamber of Com. v. Edmondson*,
594 F.3d 742, 759 (10th Cir. 2010) ............................................................................ 8, 11

*Church of Rock, Inc. v. Town of Castle Rock*,
787 F. Supp. 3d 1187 (D. Colo. 2024) .............................................................................. 8

*Colo. Mont. Wyo. State Area Conf. of NAACP v. U.S. Election Integrity Plan*,
2022 WL 1443057 (D. Colo. May 6, 2022) .................................................................. 1, 9

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025) ................................................................................................. 6, 7, 11

*Kim v. Kettell*,
694 F. Supp. 3d 1379 (D. Colo. 2023) .............................................................................. 5

*N. Laramie Range All. v. FERC*,
733 F.3d 1030 (10th Cir. 2013) ......................................................................................... 8

*Pharm. Rsch. & Mfrs. of Am. v. District of Columbia*,
No. 1:05-cv-2015 (D.D.C. Nov. 7, 2005) .......................................................................... 5

*Pharm. Rsch. & Mfrs. of Am. v. District of Columbia*,
No. 1:05-cv-2015 (D.D.C. Nov. 17, 2005) ........................................................................ 5

*Planned Parenthood v. Andersen*,
882 F.3d 1205 (10th Cir. 2018) ......................................................................................... 4

*Pub. Serv. Co. v. NLRB*,
318 F.3d 1173 (10th Cir. 2003) ......................................................................................... 2

*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*,
213 F.R.D. 418 (D. Colo. 2003) ................................................................ 1

*Rocky Mountain Gun Owners v. Polis*,
121 F.4th 96 (10th Cir. 2024) .................................................................. 8

*SC Realty, Inc. v. MTC Cleaning, Inc.*,
2015 WL 11089660 (D. Kan. Feb. 19, 2015) .......................................... 4

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) ................................................................ 8

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
411 F.3d 1369 (Fed. Cir. 2005) .............................................................. 2

*Vermont v. MPHJ Tech. Invs., LLC*,
803 F.3d 635 (Fed. Cir. 2015) ................................................................ 5

*Wailes v. Jefferson Cnty. Pub. Schs.*,
2024 WL 4433942 (D. Colo. Oct. 6, 2024) ................................... *passim***Statutes**

42 U.S.C. § 1320f *et seq.* ........................................................................ 10

**Rules**

Fed. R. Civ. P. 26(d)(1) ............................................................................ 1

**Other Authorities**

Joint Mot. to Establish Briefing Schedule,
*Amgen Inc. v. Mizner*, No. 1:24-cv-810 (D. Colo. May 16, 2024), ECF 18 ..................... 2, 4, 7

Mot. for TRO & Prelim. Injunction,
*Pharm. Rsch. & Mfrs. of Am. v. District of Columbia*,
No. 1:05-cv-2015 (D.D.C. Oct. 12, 2005), ECF 2 ................................... 5

Mot. to Expedite Discovery,
*Pharm. Rsch. & Mfrs. of Am. v. District of Columbia*,
No. 1:05-cv-2015 (D.D.C. Oct. 26, 2005), ECF 11 ................................. 5

*Nat'l Infusion Ctr. Ass'n v. Kennedy*,
No. 25-50661 (5th Cir. filed Aug. 15, 2025) .......................................... 10

## INTRODUCTION

With limited exceptions, a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). "[A] pending preliminary injunction motion or hearing is not sufficient to warrant expedited discovery." *Colo. Mont. Wyo. State Area Conf. of NAACP v. U.S. Election Integrity Plan*, 2022 WL 1443057, at *1 (D. Colo. May 6, 2022). Rather, "'[a] party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures,'" which requires demonstrating that the discovery sought is "narrowly tailored to seek information necessary to support the application for preliminary relief." *Wailes v. Jefferson Cnty. Pub. Schs.*, 2024 WL 4433942, at *1 (D. Colo. Oct. 6, 2024) (quoting *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)). To the extent courts allow discovery at the preliminary-injunction stage, it is typically when the *plaintiff* seeks discovery to meet its burden. And even in that scenario, cases that "require expedited discovery … are 'expected to be rare.'" *Colo. Mont. Wyo. State Area Conf.*, 2022 WL 1443057, at *1 (quoting *Avaya, Inc. v. Acumen Telecom Corp.*, 2011 WL 9293, at *3 (D. Colo. Jan. 3, 2011)).

This is not such a rare case. No discovery is "necessary" to resolve the preliminary-injunction motion, and Defendants' discovery requests certainly are not "narrowly tailored" to aid the Court in resolving that motion. *Wailes*, 2024 WL 4433942, at *1.

Defendants' motion fails at the outset because they cannot show that any discovery is needed here. Amgen is challenging Defendants' imposition of a price cap on its patented drug ENBREL®. In its preliminary-injunction motion, Amgen contends it is likely to succeed on its claims that (1) the federal patent laws preempt Colorado from imposing any price cap on Enbrel,

and (2) Colorado's price-control scheme lacks the meaningful standards and procedures required by due process. As Defendants conceded in earlier litigation involving the same claims, Amgen's preemption and due-process challenges "raise[] legal questions that may be properly resolved ... without the need for discovery or trial." Joint Mot. to Establish Briefing Schedule at 2, *Amgen Inc. v. Mizner*, No. 1:24-cv-810 (D. Colo. May 16, 2024), ECF 18 ("Joint Briefing Mot."). Consistent with that concession and the Court's agreement, Defendants previously briefed these claims on cross-motions for summary judgment without any discovery. *See Amgen*, No. 1:24-cv-810 (D. Colo. May 21, 2024), ECF 20 ("Briefing Order") (text order granting parties' request to proceed directly to summary judgment). That makes sense, as both preemption and due process are pure questions of law. *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005) ("Preemption is a question of law reviewed *de novo*."); *Pub. Serv. Co. v. NLRB*, 318 F.3d 1173, 1182 (10th Cir. 2003) (whether governmental action "violates due process ... is a question of law subject to de novo review").

Defendants now say they need discovery to "respond to Amgen's alleged claims of injury and irreparable harm." Mot. 10. But as Amgen explained in its preliminary-injunction motion, "[n]o evidentiary record is needed to establish" that a price cap on *Amgen's* drug will injure *Amgen*, which establishes both standing and—because Amgen's losses are unrecoverable due to sovereign immunity—irreparable harm. ECF 18 at 20, 35. That is obvious as a matter of common sense and basic economics, and it is confirmed by the text of the challenged statute, as well as by public statements by the statute's sponsor and Defendants themselves. *Id.* at 18–24. While Amgen submitted declarations to provide context and "make matters crystal clear," *id.* at 20, the Court does not need to resolve any disputed factual issues to decide whether a preliminary injunction is

warranted. Defendants have never identified any facts that are genuinely in dispute or even articulated any theory under which the price cap on Enbrel would not injure Amgen. At a minimum, Amgen should not be subject to burdensome discovery unless and until Defendants identify a genuine factual dispute and the Court determines that it needs additional evidence to decide the questions presented.

Moreover, even if Defendants could establish that some discovery is "necessary," they cannot possibly show that their sweeping discovery requests are "narrowly tailored." *Wailes*, 2024 WL 4433942, at *1. Many of Defendants' requests seek competitively sensitive information with no conceivable relevance to any issue presented by Amgen's preliminary-injunction motion (for example, Amgen's exact investment cost for Enbrel and profit/loss reports for every year Enbrel has been on the market). And further delaying resolution of Amgen's preliminary-injunction motion for months while Defendants take unnecessary discovery would serve no useful purpose and be highly prejudicial. While Defendants claim they are now willing to "stay enforcement" of the price cap, Mot. 13–14, they continue to oppose entry of a preliminary injunction, and they have refused to allow Amgen and others sufficient time to come into compliance in the event this Court ultimately upholds the price cap—meaning that while the litigation is pending, Amgen would have to incur the very costs it seeks preliminary relief to avoid. In any event, if Defendants are truly willing to provide "the relief Amgen ultimately seeks from the Court" in Amgen's preliminary-injunction motion, Mot. 9, then no discovery is needed and the Court can simply grant the motion as unopposed. In any case, Defendants' motion for expedited discovery should be denied.

## ARGUMENT

**I.     No discovery is needed to resolve Amgen's preliminary-injunction motion.**

Defendants must show that their requested discovery is "narrowly tailored to seek information necessary to support the application for preliminary relief." *Wailes*, 2024 WL 4433942, at *1. Here, no discovery is "necessary" because Amgen's motion raises primarily legal questions, Defendants fail to identify any facts that are genuinely in dispute, and any factual questions that do exist can be resolved without discovery.

Amgen's preliminary-injunction motion seeks to enjoin Defendants from enforcing a price cap on Amgen's patented drug Enbrel because the price cap is preempted by federal patent law and violates Amgen's due-process rights.[1] The "first and most important" question for the Court to resolve on the preliminary-injunction motion is whether Amgen is "likely to succeed on the merits" of its purely legal patent-preemption and due-process claims. *See Planned Parenthood v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018). Where "resolution of whether the court should issue a temporary injunction will primarily turn on a legal [question]," courts have concluded that discovery is not "necessary, or particularly helpful, to that task." *SC Realty, Inc. v. MTC Cleaning, Inc.*, 2015 WL 11089660, at *1 (D. Kan. Feb. 19, 2015). Recognizing this reality in the parties' prior litigation involving the very same claims, Defendants acknowledged that these claims "raise[] legal questions that may be properly resolved ... without the need for discovery or trial" and agreed to proceed to summary judgment on these claims without any discovery. *See* Joint Briefing Mot. at 2. The Court agreed and proceeded directly to summary judgment without any

---

[1] Amgen's complaint also alleges that the price cap violates the Commerce Clause, but Amgen is not seeking preliminary relief based on that claim. ECF 18 at 3 n.1.

discovery. *See* Briefing Order.

Proceeding without discovery was consistent with the controlling case that supports Amgen's patent-preemption challenge. That case holds as a matter of law that the federal patent laws preempt state laws that seek to "restrain" what a state considers "excessive prices" for patented drugs. *Biotech. Indus. Org. v. District of Columbia* (*BIO*), 496 F.3d 1362, 1372–74 (Fed. Cir. 2007).[2] In *BIO*, the plaintiffs challenged a price-control statute and sought a preliminary injunction—attaching six declarations to support standing and irreparable harm—and the defendants moved for expedited discovery. *See* Mot. for TRO & Prelim. Injunction, *Pharm. Rsch. & Mfrs. of Am. v. District of Columbia* (*PhRMA*), No. 1:05-cv-2015 (D.D.C. Oct. 12, 2005), ECF 2; Mot. to Expedite Discovery, *PhRMA*, No. 1:05-cv-2015 (D.D.C. Oct. 26, 2005), ECF 11. The district court denied discovery and consolidated the preliminary-injunction motion with a determination of the merits, holding that "the issues presented in this case are purely legal and … there is no need for discovery by either party." *PhRMA*, No. 1:05-cv-2015 (D.D.C. Nov. 17, 2005) (text order); *see also PhRMA*, No. 1:05-cv-2015 (D.D.C. Nov. 7, 2005) (text order denying motion for expedited discovery). Likewise here, no discovery is needed to resolve Amgen's purely legal challenges, as Defendants previously conceded.

Now, however, Defendants have changed course and assert that any ruling on Amgen's preliminary-injunction motion must be substantially delayed so that Defendants can conduct discovery—not into the merits of Amgen's claims, but to "respond to Amgen's alleged claims of

---

[2] When a state law is challenged as preempted by the federal patent laws, Federal Circuit precedent is controlling. *See BIO*, 496 F.3d at 1369; *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 643–47 (Fed. Cir. 2015); *Kim v. Kettell*, 694 F. Supp. 3d 1379, 1395 (D. Colo. 2023).

injury and irreparable harm." Mot. 10. But no discovery is needed on these topics. The harm to Amgen from a price cap on "downstream" sales of Amgen's drug—which is *more than 70% below* the price at which Amgen currently sells the drug to wholesalers, *see* ECF 18 at 14–15—is indisputable and obvious.

No evidentiary record is needed to establish this commonsense point. It cannot plausibly be disputed that Amgen will be harmed—and irreparably so, since Amgen cannot recover its losses from Defendants due to sovereign immunity—by a price cap on its product that is dramatically below the current market price. *See* ECF 18 at 20–21, 36–37. As detailed in Amgen's preliminary-injunction motion, the Supreme Court has recognized that "commonsense economic principles" can justify standing where an upstream manufacturer sues to challenge a downstream regulation. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 116–18 (2025). Here, it is common sense that a wholesaler or other downstream seller will not pay Amgen's current price for Enbrel if that seller is forced to sell Enbrel downstream at a price that is 70% below Amgen's price. That obvious proposition is reinforced by the text of Colorado's law, statements of the law's leading sponsor, and Defendants' own statements, all of which are a matter of public record. *See* ECF 18 at 22–24. Likewise, Amgen's assertion that it will need to incur costs well before the price cap's effective date of January 1, 2027, is supported by common sense; by the statutory text, which requires a minimum of six months between adoption of the price cap and its effective date and requires Amgen to decide whether it will sell Enbrel in Colorado subject to the price cap by no later than July 5, 2026; and by Defendants' own statements recognizing that Amgen and other actors would need a substantial amount of time to prepare to comply with the price cap, justifying a 15-month "runway" between the price cap's adoption and its effective date. *See* ECF 18 at 16–17, 35–37;

ECF 1-10 at 50:10–54:22.

Defendants' suggestion that they need discovery to test Amgen's reliance on "basic economics and common sense," Mot. 5 (quotation marks omitted), misses the point. "Commonsense inferences" are just that—inferences drawn from everyday experience, not ones that need to be proven with evidence. That is why the Supreme Court in *Diamond* cited record evidence merely as "confirm[ation]" of "commonsense inferences," rather than as a prerequisite for drawing them. 606 U.S. at 116, 118. As explained above, Defendants conceded that Amgen's claims "raise[d] legal questions that c[ould] be properly resolved ... without the need for discovery" even before the Supreme Court issued its decision in *Diamond*, *see* Joint Briefing Mot. at 2, and *Diamond* eliminates any doubt that courts can rely on "commonsense economic principles" to find "upstream economic injuries to … manufacturers" from downstream regulation. 606 U.S. at 116.

Despite ample opportunity to do so in this litigation and the prior one, Defendants have never identified any good-faith basis to question the commonsense inference that a price cap on Amgen's drug will injure Amgen. Defendants' motion fails to identify any relevant facts that are genuinely in dispute, or even to articulate any factual theory under which capping the price of Amgen's drug far below the current market price could somehow fail to affect Amgen. Because Defendants have not demonstrated that the Court needs record evidence to resolve Amgen's motion, they are not entitled to expedited discovery.

Moreover, even if—contrary to the Supreme Court's holding in *Diamond*—record evidence were necessary to understand that a manufacturer has a cognizable interest in a price cap imposed on a product it sells, discovery still would not be warranted at this stage. Preliminary-injunction motions are routinely decided based on written testimony without any discovery. *See,*

*e.g.*, *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 107–12 (10th Cir. 2024) (relying on plaintiffs' affidavits to establish standing to seek a preliminary injunction); *Chamber of Com. v. Edmondson*, 594 F.3d 742, 759, 770–71 (10th Cir. 2010) (relying on plaintiffs' "complaint and declarations" to find standing and irreparable harm); *Church of Rock, Inc. v. Town of Castle Rock*, 787 F. Supp. 3d 1187, 1197 (D. Colo. 2024) (relying on plaintiff's "sworn affidavits" to support issuance of preliminary injunction). Indeed, the Court's original order envisioned such an approach here: The Court instructed the parties to "submit all pertinent exhibits and direct witness testimony (by affidavit or declaration) as attachments to their briefs" and did not contemplate any discovery. ECF 33 (text order). The administrative-law context is also instructive: When a party challenges a decision by an administrative agency, even if (unlike here) the party's "standing is not self-evident," the party can "establish its standing by the submission of its arguments and any affidavits or other evidence." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002); *see also N. Laramie Range All. v. FERC*, 733 F.3d 1030, 1034 (10th Cir. 2013) (adopting *Sierra Club*'s reasoning).

Defendants identify no basis for departing from this customary approach. To the extent common sense alone is not enough, Amgen can demonstrate (and has demonstrated) standing and irreparable harm through the declarations submitted with its preliminary-injunction motion, which detail the harm Amgen will face from the price cap both before and after its effective date. Defendants' motion does not identify any reason to doubt the veracity of those declarations or point to any facts set forth in the declarations that Defendants dispute. That is sufficient at this stage. *See Edmondson*, 594 F.3d 742 at 770–71. If a defendant could get expedited discovery simply by asserting a desire to probe the basis for a plaintiff's declarations, then discovery at the preliminary-injunction stage would be the norm instead of the "rare" exception. *See Colo. Mont.*

*Wyo. State Area Conf.*, 2022 WL 1443057, at *1 (quoting *Avaya*, 2011 WL 9293, at *3).

Notably, Defendants do not identify a single case where a court has awarded expedited discovery before a preliminary-injunction hearing to a defendant, rather than to a plaintiff bearing the burden of proof. Nor do they identify any support for the notion that a defendant should be able to pursue discovery without identifying any genuine factual dispute, merely by asserting that it wants to explore whether there might be any basis for contesting the plaintiff's evidence of standing and irreparable harm. Defendants have spent years studying and ultimately deciding to impose a price cap on Amgen's drug, Enbrel. *See* ECF 18 at 11–17. If they have any plausible basis for advancing the astonishing claim that capping Enbrel's price will have no adverse consequences for Amgen, it was surely their burden to come forward with that evidence *before* seeking to burden Amgen and this Court with discovery and improper delay.

## II.    Defendants' requested discovery is exceedingly overbroad.

A party seeking the extraordinary relief of expedited discovery at the preliminary-injunction stage must show not only that discovery is "necessary," but also that its requests are "narrowly tailored." *Wailes*, 2024 WL 4433942, at *1. Here, the breadth of Defendants' discovery requests reveals that their motion has little to do with the issues properly before the Court. Instead, Defendants seek to gain a dubious strategic advantage by demanding confidential and highly sensitive commercial information and diverting the attention of the parties and the Court from the relevant issues in this case.

***First***, several of Defendants' requests appear aimed at gathering information to bolster an argument that the price cap is somehow "fair" or that the harm to Amgen from the price cap is justified. Mot. 12; *see, e.g.*, RFP No. 7 (demanding documents exchanged with the federal

government in so-called "negotiations" regarding the price for sales to Medicare[3]); RFP No. 9 (demanding profit/loss reports for every year Enbrel has been on the market); ROG No. 9 & RFA No. 1 (demanding Enbrel's "exact investment cost" and an admission that Amgen has "recouped [its] investment" in Enbrel); RFP No. 8 & RFA No. 2 (demanding information about Amgen's patents, even though Defendants have conceded that Enbrel is patent-protected until 2029, *see* ECF 18 at 12); RFA No. 6 (demanding an admission that Amgen "will continue to profit from" sales of Enbrel).

Defendants argue that this discovery will help them determine Amgen's "anticipated rate of return and recoupment on investment" and "what Amgen considers a fair price for its drug." Mot. 12. But none of this has any bearing on Amgen's legal claims in this case—that states are preempted from regulating the prices of patented drugs, and that Colorado's scheme lacks the standards and procedures required to comport with due process. Those claims do not turn on what Amgen, Defendants, or anyone else might consider a "fair" price; they turn instead on whether the Constitution and federal law allow Colorado to dictate a maximum price for Amgen's drug in the way it has done here. Nor do the discovery requests have any bearing on whether Amgen is injured. Whatever price Defendants consider "fair," Amgen is indisputably harmed if the state forces it to

---

[3] Amgen does not agree that these are "negotiations" at all. The federal Inflation Reduction Act, 42 U.S.C. § 1320f *et seq.*, authorizes the Centers for Medicare and Medicaid Services to impose a maximum price for certain drugs that are covered by Medicare. Pursuant to that authority, CMS determined to include Enbrel (along with several other drugs) in a federal price-setting scheme. Those provisions of the IRA are the subject of ongoing litigation, including a constitutional challenge brought by Pharmaceutical Research and Manufacturers of America, of which Amgen is a member. *See Nat'l Infusion Ctr. Ass'n v. Kennedy*, No. 25-50661 (5th Cir. filed Aug. 15, 2025). Regardless, communications between Amgen and CMS regarding a *federal* price that applies exclusively to sales covered by Medicare have no relevance to whether *Colorado's* price-control scheme comports with federal law and the Constitution.

sell Enbrel at prices lower than it would otherwise be able to.

*Second*, many of Defendants' requests demand precise quantification of Amgen's indisputable injuries. *See, e.g.*, ROG Nos. 1–6 (demanding "the exact dollar amount" of Amgen's anticipated lost revenue "with explanation and supporting calculation," "detail[ed]" descriptions of Amgen's contracting cycles and associated costs, and "a detailed breakdown" of costs associated with modifying Amgen's payment systems); RFA No. 3 (demanding an admission that Amgen has not provided a "dollar amount of actual or anticipated profit loss" from the price cap).

These requests, too, are beside the point. There can be no serious doubt that a price cap on Amgen's drug that is dramatically below the current market price will "cause … upstream economic injuries to" Amgen, *Diamond*, 606 U.S. at 116, and will cost Amgen a substantial amount of money. Requiring Amgen to quantify those losses goes far beyond the needs of this case. Amgen is not seeking monetary damages, so its anticipated losses are relevant only to standing and irreparable harm. And it is well established that *any* amount of financial injury is enough for standing. *See, e.g.*, *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("A dollar of economic harm is still an injury-in-fact for standing purposes."). So too, *any* financial losses here are "irreparable" because they "cannot later be recovered [due to] sovereign immunity." *Edmondson*, 594 F.3d at 770–71. Precise quantification is not required or relevant.

*Third*, several of Defendants' requests concern topics better suited for attorney argument. *See, e.g.*, ROG Nos. 7 & 8 (demanding a detailed explanation of "basic economics and common sense" and why Amgen will "absorb the cost of" the price cap); RFA Nos. 4 & 5 (demanding admissions that Amgen's contracts can be amended). As noted above, common sense is not an appropriate subject for discovery—that's what makes it *common* sense. Amgen has already

explained numerous times why it cannot sell its drug to wholesalers at a price dramatically higher than the price at which the drug can legally be resold, *see, e.g.*, ECF 1 ¶¶ 82–98; ECF 18 at 18–24; ECF 19 ¶¶ 12–17; three major U.S. wholesalers have submitted declarations confirming this is so, ECF Nos. 20–22; and Defendants have never attempted to refute this. Requiring Amgen to repeat this explanation yet again in response to interrogatories is not an appropriate use of discovery, let alone expedited discovery.

*Fourth*, Defendants' remaining requests are aimed at testing the veracity of the declarations submitted by Amgen employees and wholesaler representatives. *See* RFP Nos. 1–6 (demanding copies of numerous confidential contracts, correspondence held by numerous custodians, and documentation regarding wholesalers' profit margins and "standard industry practice"); Mot. 6 (demanding depositions of each declarant). But Defendants provide no reason to doubt the declarants' sworn testimony and no plausible suggestion of what sorts of discoverable documents would undermine their straightforward declarations. To the extent the Court determines that it would be helpful for Defendants to have an opportunity to cross-examine certain declarants (which Amgen respectfully submits is unnecessary for all the reasons explained above), such examination should occur at the preliminary-injunction hearing, as contemplated by the Court's original order, ECF 33, rather than through depositions that delay resolution of the preliminary-injunction motion. Defendants' suggestion that it would somehow be more efficient for the parties to conduct depositions and other discovery rather than addressing these issues at a hearing, Mot. 12, makes no sense.

In sum, examining Defendants' discovery requests lays bare the improper purpose of their motion: not to conduct discovery that is "narrowly tailored" to obtain information "necessary" to

resolve the preliminary-injunction motion, *Wailes*, 2024 WL 4433942, at *1, but to delay resolution of Amgen's motion, impose unnecessary costs and burdens on Amgen and its wholesalers, and rummage through Amgen's confidential materials.

### III. Equitable considerations also favor denying the motion.

The Court should also consider the severe delay and prejudice to Amgen that would result from allowing Defendants' requested discovery. Defendants' response to Amgen's preliminary-injunction motion was initially due December 19, 2025. ECF 33. Simply by filing their discovery motion, Defendants have already obtained at least a 40-day extension of that deadline. *See* ECF 38 (setting hearing on Defendants' motion for January 7); ECF 37 (ordering Defendants to respond to Amgen's motion within three weeks if discovery is denied). And Defendants are seeking an even longer delay: They ask for discovery to run until February 28, 2026, which would mean their response to Amgen's motion would not be due until March 30, Amgen's reply would be due April 20, and the motion likely could not be resolved any earlier than late April. *See* ECF 37 (ordering Defendants to respond to Amgen's motion four weeks after completion of discovery, if granted, and ordering that any reply be due three weeks after Defendants' response).

Allowing Defendants to delay resolution of Amgen's preliminary-injunction motion will force Amgen to suffer the same irreparable harm it seeks preliminary relief to avoid. *See* ECF 18 at 35–37. As detailed in Amgen's preliminary-injunction motion and accompanying declarations—and as Defendants themselves acknowledged when they created a 15-month "runway" for implementation of the price cap—the cap is already imposing unrecoverable costs on Amgen, and those costs will continue to mount the longer Amgen must wait for relief. *See* ECF 18 at 35–37.

Defendants' suggestion that Amgen is "seeking a rushed decision on the merits of the case

without proper discovery," Mot. 9, is baseless. As explained above, Defendants previously agreed that the merits of Amgen's claims do not require *any* discovery. Moreover, Amgen has done everything it could to avoid the need to seek relief on an expedited basis. Amgen first brought these claims in March 2024, but Defendants successfully argued that Amgen could not sue until the Board finalized the price cap. *See* ECF 18 at 13–14. Amgen filed this action on October 30, 2025, shortly after the rule establishing a price cap was finalized, and immediately notified Defendants' counsel of its intent to seek a preliminary injunction. Amgen sought to reach agreement on a reasonable briefing schedule, then delayed its filing for nearly three weeks *at Defendants' request* (and through two meetings unilaterally cancelled by Defendants). *See* ECF 18 at 40–41. If Defendants now feel "rushed," the responsibility lies with Defendants, not Amgen.

Defendants' purported offer to stay enforcement does not impact this analysis; it only confirms why their motion should be denied. For one, Defendants' position is shifting and unclear. Defendants previously stated that any stay offer was "contingent on Amgen not filing a motion for preliminary injunction," and they refused Amgen's request to give it sufficient time to come into compliance *after* any decision by this Court upholding the price cap. ECF 34-1 at 3. Amgen considered that offer and reasonably determined that it would receive more protection and clarity from a preliminary injunction. *Id.* at 1. Defendants' position would force Amgen to incur all the many undisputed costs of preparing to comply with the price cap while the litigation proceeds. *See* ECF 18 at 35–36. By contrast, a preliminary injunction issued by this court would give Amgen comfort that it need not incur those costs while the preliminary injunction is in effect.

In an apparent change from their previous position that any stay offer was "contingent" on Amgen not seeking a preliminary injunction, ECF 34-1 at 3, Defendants now state that they

"continue to offer a stay of enforcement," Mot. 9. Yet Defendants *oppose* Amgen's preliminary-injunction motion and even insist they need discovery to do so more effectively. Defendants do not explain how the stay they offer would enable Amgen to avoid the costs of preparing to comply with the price cap. And if Defendants are truly willing to provide "the relief Amgen ultimately seeks from the Court," *id.*, then no discovery is necessary and the Court should simply grant Amgen's preliminary-injunction motion as unopposed.

Finally, while Amgen firmly believes no discovery is warranted, if this Court were to disagree and grant Defendants expedited discovery, it should also allow Amgen to take reciprocal discovery from Defendants. For example, despite almost two years of litigation between this case and the prior one, Amgen *still* does not know whether or on what basis Defendants dispute the commonsense reality that the state's price cap on *Amgen's* drug will harm *Amgen*. Do Defendants actually contend that Amgen can continue selling Enbrel to wholesalers at the current market price, even though the price cap would cause the wholesalers to lose money on every sale? If discovery is granted, Amgen should be allowed to use discovery to determine Defendants' understanding of how the price cap will function and the factual basis for any contention by Defendants that the price cap will somehow not harm Amgen.

## CONCLUSION

Because discovery is unnecessary and would only result in wasteful and prejudicial delay, Amgen respectfully requests that the Court promptly deny Defendants' motion and move forward with briefing on Amgen's pending motion for a preliminary injunction.

Dated: December 19, 2025

Respectfully submitted,

*/s/ Paul Alessio Mezzina*
Ashley C. Parrish
(D.C. Bar No. 464683)
Paul Alessio Mezzina
(D.C. Bar No. 999325)
Kelly Nicole Reeves
(D.C. Bar No. 471923)
Alexander Kazam
(D.C. Bar No. 1708188)
Nicholas A. Mecsas-Faxon
(D.C. Bar No. 1779269)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
Tel: (202) 737-0500
aparrish@kslaw.com
pmezzina@kslaw.com
nreeves@kslaw.com
akazam@kslaw.com
nmecsas-faxon@kslaw.com

Cliff Stricklin
(Colo. Bar No. 39725)
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Tel: (720) 535-2300
cstricklin@kslaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2025, I electronically filed the foregoing Opposition to Defendants' Motion for Limited Expedited Discovery with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Paul Alessio Mezzina
Paul Alessio Mezzina

*Counsel for Plaintiffs*